EL PUEBLO *v.* ORTIZ ET AL.

APELACIÓN procedente de la Corte de Distrito de Ponce.

No. 259.—Resuelto en junio 23, 1911.

DERECHO PENAL—SUFICIENCIA DE LA ACUSACIÓN—PALABRAS DEL ESTATUTO.—Es regla bien aceptada, que una acusación es suficiente cuando emplea las palabras del estatuto, a menos que las circunstancias particulares del delito re-

quieran hacerlo de otro modo, como cuando determinados hechos son necesarios para constituir un delito.

ID.—DESCUIDO O NEGLIGENCIA.—Constituye descuido o negligencia según el Juez Cooley, el dejar de observar, para la protección de los intereses de otra persona, aquel grado de ciudado, de precaución y vigilancia que justamente requieran las circunstancias y por consecuencia de la cual, otra persona sufre algún daño.

ID.—PRUEBA CONTRADICTORIA—APRECIACIÓN DEL TRIBUNAL SENTENCIADOR.—En los casos de prueba contradictoria, la apreciación que el tribunal sentenciador haga de la culpabilidad de los acusados, no será revocada, a menos que se demuestre en apelación que obró movido por pasión, prejuicio o grave error.

ID.—VELOCIDAD DE UN TREN—EXISTENCIA DE NEGLIGENCIA.—En ausencia de un estatuto u ordenanza que regule la velocidad de un tren, el correrlo a cualquier velocidad no es negligencia *per se*, y el que exista, dependerá de las circunstancias del caso y de la seguridad de los pasajeros y viandantes, siendo esta regla igualmente aplicable al hecho de que la máquina camine con los vagones por delante.

ID.—USO DE LA VÍA FÉRREA—CRUCES—PASO A NIVEL.—Como regla general, la vía es del exclusivo uso de la empresa que la explota, excepto en los cruces en las calles públicas; y cuando se operan trenes en la calle de una ciudad usada comúnmente por viandantes y vehículos, es deber del maquinista tomar precauciones contra colisiones, que no son necesarias cuando opera fuera de esas circunstancias, porque debe presumirse la presencia en la vía, y debe por tanto usarse un razonable cuidado, siendo el deber de las empresas y de sus empleados ejercitar ordinario cuidado y precaución proporcionados a las probabilidades de accidentes, cuando es sabido, o se puede esperar que haya personas en la vía.

ID.—NEGLIGENCIA CONTRIBUTORIA DE LA PERSONA MUERTA.—El Código Penal castiga a los que causan la colisión de un tren voluntariamente o por descuido, sin tener en consideración la negligencia de la persona muerta sino solamente la conducta de los encargados del tren, porque en estos casos la causa próxima del accidente es la voluntad o la negligencia.

ID.—NEGLIGENCIA DEL MAQUINISTA Y DEL CONDUCTOR DE UN TREN.—Examinada la prueba practicada en este caso, el Tribunal Supremo resolvió que tanto el maquinista como el conductor del tren, no ejercieron una diligencia razonable sino que por el contrario fueron culpables de descuido o negligencia.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. Domingo Sepúlveda.*

Abogado del apelado: *Sr. Jesús M. Rossy, Fiscal.*

EL JUEZ ASOCIADO SR. ALDREY, emitió la opinión del tribunal.

Contra los apelantes en este caso se presentó en la Corte de Distrito por el Distrito de Ponce, la siguiente acusación:

"El Fiscal formula acusación contra José Ortiz y Domingo Estepa, como autor de un delito contra la seguridad pública (*felony*),

cometido como sigue: El día 3 de febrero de 1910, los referidos José Ortiz y Domingo Estepa, conducían, como maquinista y conductor un tren de carga de la "American Railroad Co. of Porto Rico" que se dirigía de esta ciudad de Ponce a su Playa, que forma parte del Distrito Judicial de Ponce, P. R., y habiendo entrado en el poblado de la referida Playa de Ponce sin tomar precaución de ninguna clase y debido a su negligencia y descuido, dejaron chocar dicho tren de carga con un carro en donde se encontraba el individuo Demetrio Cancio, quien fué arrollado por dicho tren y mutilado en tal forma que falleció enseguida. Este hecho es contrario a la ley para tal caso prevista y a la paz y dignidad de el Pueblo de Puerto Rico. Rafael Palacios, Fiscal de Distrito. La acusación que antecede está basada en el testimonio de testigos examinados bajo juramento, creyendo solemnemente que existe justa causa para presentarla al Tribunal. Rafael Palacios, Fiscal de Distrito."

Celebrado el juicio, dicha corte declaró a ambos acusados culpables del delito que se les imputaba y en 14 de abril de 1910, los condenó a sufrir la pena de un año de presidio con trabajos forzados y al pago de costas, contra cuyo fallo han establecido el presente recurso de apelación.

Encontramos que la acusación es suficiente porque ha seguido las palabras del estatuto al imputarles, que por descuido produjeron un choque o colisión de un tren, resultando la muerte de una persona.

Es regla bien aceptada, que una acusación es suficiente cuando emplea las palabras del estatuto, a menos que las circunstancias particulares del delito requieran hacerla de otro modo, como cuando determinados hechos son necesarios para constituir un delito. (Véase *People* v. *Neill,* 91 Cal., 465, y los casos citados en Pomeroy Codes of California, pág. 345; también 94 Am. Dec., 253-258, y notas.)

Ahora bien, el descuido o negligencia lo define el Juez Cooley diciendo que es "el dejar de observar, para la protección de los intereses de otra persona, aquel grado de cuidado, de precaución y vigilancia que justamente requieran las circunstancias, y por consecuencia de lo que otra persona sufre algún daño." (29 Cyc., 415.)

Aceptando esta definición como buena, veamos las circuns-
tancias en que el hecho ocurrió, qué hicieron los acusados y
qué debieron hacer.

De la evidencia contenida en la exposición del caso apa-
rece que en la tarde del día 3 de febrero de 1910, José Ortiz
y Domingo Estepa, conducían como maquinista y conductor,
respectivamente, un tren de carga compuesto de una má-
quina y cuatro vagones por delante que se dirigía desde la
ciudad de Ponce hacia el poblado de la Playa, pero antes de
entrar en el poblado caminaba el tren entre altos cañaverales
y con una curva muy pronunciada, por cuyas circunstancias,
hasta llegar a un portón que limita el cañaveral con una calle,
no era posible que desde el tren se viera lo que en ella ocu-
rriese.

Al principio de esa calle, y como a diez y seis o veinte
varas del portón, está situada la casa de la señora Llorens,
contigua a la cual está colocada la vía férrea, como a tres
varas de distancia, teniendo la calle en totalidad algo más de
doce varas de ancho.

Por toda la evidencia se llega al hecho no controvertido,
de que el día a que se refiere la acusación un carro con car-
bón fué situado por su conductor, el carbonero, frente a la
casa de la señora Llorens, arrimado a aquélla, pero atrave-
sado en la vía, practicando en tales condiciones la descarga,
cuando en los momentos en que el carbonero cargaba un saco,
llegaba el tren y dejando aquél el saco, saltó al carro, tomó
las riendas y trató de sacarlo de aquel sitio sin que tuviera
tiempo para ello, pues llegando el tren, el primero de sus va-
gones chocó con una de las ruedas del carro frente a la casa
de la Señora Llorens, arrastrándolo hasta que se rompió una
rueda a 12 o 14 varas, quedando el carbonero muerto quince
o veinte metros más lejos.

La contradicción entre la prueba de la acusación y de la de-
fensa, consiste en que los tres testigos de la primera sostienen
que el tren que mató al carbonero no tocó el pito ni la com-
pana, que no caminaba despacio sino con alguna velocidad

y en que no vieron a ningún hombre delante de la vía que hiciera señales al tren, asegurando todos ellos que antes, y luego también, pero no en aquel día, acostumbraba el tren a caminar con mucho cuidado, despacio, a tocar el pito y la campana y a ir el conductor a pie delante del tren o en el primer vagón, agregando la Sra. Llorens, que al sentir el ruido de las ruedas del tren, por la trepidación en su casa, y sabiendo que estaba allí el carro del carbonero, y no habiendo oído ni el pito ni la campana, salió al balcón de su casa para evitar una desgracia y lo primero que hizo fué tratar de ver al conductor pero no lo vió y en seguida empezó a gritar al maquinista, lo que hizo hasta que la máquina estuvo frente al balcón de su casa, viendo al maquinista con la mano en el regulador recostado, mirando hacia abajo: siguió llamándole pero no la oía, y cuando la máquina llegó frente a ella, levantó la vista el maquinista y entonces dió vueltas al regulador, pero ya había arrollado al carro y al hombre y no paró hasta la casa contigua.

Por sus partes los dos acusados, declarando, dijeron respecto a estos particulares, el maquinista, que a ciento cincuenta metros del poblado como acostumbra y por deber, tocó el pito y conociendo el fogonero el deber que tiene de tocar la campana, la iba tocando; que la mayor velocidad que llevaba sería de seis a ocho kilómetros por hora, yendo al paso de un hombre; que el conductor se tiene que apear, tirándose al llegar al portón, como lo verificó y le hizo señas en seguida para que parara, por lo que dió contra marcha y pidió freno al fogonero, quien tuvo que abandonar la campana: que paró el tren un poco después del portón y que aun cuando iba de espalda al poblado, miraba hacia atrás para ver al conductor.

El conductor declaró que cuando llegaron al sitio que pitan, tocaron la compana y pitaron, que al llegar al portón se tiró y corrió hacia delante, vió el carro y mandó parar; que el tren iba al paso de un hombre.

El fogonero dijo, que tiene que tocar la campana en los

pasos a nivel y en las entradas a poblados; que el maquinista tocó el pito en el sitio que hay una tabla (no se ha determinado cuál es) y entonces empezó a tocar la campana, mas no sabe si cuando el maquinista le pidió freno ya había ocurrido el choque; y que no vió al conductor en el vagón de adelante, que es donde va.

El testigo Soto, sargento de la Policía Insular, no estaba en la playa esa tarde y se limita a decir que las máquinas entran en el poblado con las debidas precauciones y han tocado campana cuantas veces ha visto entrar los trenes.

Por último el testigo González empezó diciendo que ese día oyó la campana, que algunos maquinistas la tocan y otros nó y concluyó diciendo, que la campana la oyó muy lejos, mucho más allá del desvío y que no la tocaron al entrar al poblado.

. Por lo que hemos consignado se comprende que la evidencia es contradictoria en los extremos que hemos expuesto, conflicto que el juez que oyó a los testigos resolvió en favor de los de la acusación por el hecho de condenar; resolución que no alteraremos, porque no se nos ha demostrado que obrara movido por pasión, prejuicio o grave error, con mayor motivo, cuanto que llegamos a la misma conclusión que él con el estudio que hemos hecho de esa evidencia.

En las diligencias consta una inspección ocular de la corte en compañía del Fiscal y del abogado del acusado, de la que hemos tomado algo al principio de esta opinión. Según ella se tuvo a disposición de la corte la misma máquina con cuatro vagones, dispuestos en la misma forma que el día del accidente y conducidos por los acusados y el fogonero que les acompañaba. ·

Se hizo andar la máquina a la velocidad del paso de un hombre, el conductor se tiró del último vagón antes de llegar a la puerta de golpe, desde allí hizo señales al maquinista, éste apresuradamente cerró el regulador, el fogonero dió freno instantáneamente y a pesar de ello el tren recorrió 25 o 30

metros más.   De la misma aparece que desde el portón hacia
la Playa, hay un ligero declive.

Hemos llegado a conocer cómo era la situación y condición
de la vía en aquel sitio; que no fué tocado el pito ni la cam-
pana; que el conductor no se tiró del vagón al llegar a la
puerta de golpe o portón, ni fué visto a pie y que el tren no
iba muy despacio.

¿Son estos actos constitutivos de descuido por parte de los
acusados, para hacerles responsables del delito por el que han
sido declarados culpables y sentenciados?   Veámoslo.

Esta pregunta comprende en sí otras varias, como la de
cuál era el deber del conductor y cómo faltó a él; cuál el del
maquinista y en qué sentido dejó de cumplirlo; y también la
de si la evidencia es suficiente para estimar probada la negli-
gencia o descuido por parte de los acusados y fundar en ella
una sentencia condenatoria.

El deber del conductor y del maquinista para ser diligen-
tes y no descuidados era, dadas las circunstancias del sitio,
el que ellos mismos han especificado en sus declaraciones y
aceptado como tal, esto es, dado que caminaban en una curva
muy pronunciada por entre altas cañas antes de llegar al por-
tón, y que hasta llegar al principio de la calle no podía ésta
ser vista, y toda vez que desde el portón hay algún declive en
la calle, ha debido el maquinista llevar su máquina tan suma-
mente despacio que cuando el primer vagón, pasando la puer-
ta de golpe, entrase en la calle, pudiese el tren ser parado an-
tes de causar daño a alguna persona que estuviese al prin-
cipiar esa calle; debió tocar el pito para que los viandantes
pudieran conocer que se aproximaba un tren, y por igual ra-
zón debió sonar la campana constantemente o hacer que su
fogonero la tocara, todo ello con mayor razón cuanto que las
condiciones del sitio, de llevar cuatro vagones por delante y
de ir él de espaldas al poblado exigían más cuidado y pre-
cauciones.

Por su parte el conductor, como jefe del tren no debió de
permitir que se dejaran de hacer las anteriores señales de

proximidad del tren y si no se bajaba de él para caminar delante en sitio tan peligroso como aquél y poder evitar con tiempo cualquiera desgracia que pudiera ocurrir, debió, por lo menos, estar vigilante en el vagón delantero.

En aquellas condiciones cualquier hombre prudente y razonable hubiera tomado esas precauciones; los mismos acusados reconocen que esas eran las que debían y tenían el deber de tomar, y son las que la jurisprudencia ha establecido para casos análogos.

En ausencia de un estatuto u ordenanza que regule la velocidad de un tren, el correrlo a cualquier velocidad no es negligencia *per se,* y el que exista negligencia dependerá de las circunstancias del caso y de la seguridad de los pasajeros y viandantes, siendo esta regla igualmente aplicable al hecho de que la máquina camine con los vagones por delante.

Como regla general, la vía es del exclusivo uso de la empresa que la explota, excepto en los cruces o en las calles públicas; y cuando se operan trenes en la calle de una ciudad, usada comúnmente por viandantes y vehículos, es su deber tomar precauciones contra colisiones, que no son necesarias cuando opera fuera de esas circunstancias, porque debe presumirse la presencia de aquéllos en la vía y debe por tanto usarse un razonable cuidado, siendo el deber de las empresas y de sus empleados ejercitar ordinario cuidado y precaución proporcionado a las probabilidades de accidentes, cuando es sabido, o se puede esperar que haya personas en la vía.

Como consecuencia de estos principios y aun cuando en ausencia de disposiciones estatutorias, no existe el deber de dar señales con la campana o con el pito, sin embargo, esa regla depende de las circunstancias que puedan aumentar el peligro de los accidentes, como sucede en los poblados, para los que el cumplimiento de un razonable cuidado requiere hacer esas señales.   (33 Cyc., págs. 735 a 782.

Por las manifestaciones de la Señora Llorens, se comprende que el maquinista estaba distraído y que hasta no lle-

gar frente a su casa, no dió vueltas al regulador, cuando arrollaba al carro y al hombre.

Además, habiendo ocurrido la rotura del carro y caída del carbonero a unas veinte y ocho o treinta varas del portón y parado el tren a unas cuarenta y cinco varas del mismo, si se hubieran observado las precauciones que se tomaron en la inspección ocular donde sólo corrió el tren 25 o 30 metros después del portón, tal vez se hubiera evitado la muerte del carbonero.

En cuanto a que la conducta de éste colocándose con su carro en la vía, cuando pudo hacerlo sin peligro en otro sitio de la calle, implica negligencia contributoria y releva a los acusados de responsabilidad, diremos que, como antes hemos consignado, dicha vía es de uso público cuando está colocada en el mismo piso de las calles y plazas, por lo que no existe tal negligencia contributoria; y además, que el Código Penal castiga a los que causan la colisión de un tren voluntariamente o por descuido, sin tener en consideración la negligencia de la persona muerta, sino solamente la conducta de los encargados del tren, porque en estos casos la causa próxima del accidente es la voluntad o la negligencia.

Por las razones expuestas la sentencia debe ser confirmada.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados MacLeary y del Toro.

Juez disidente: Sr. Wolf.